# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

JOHN L. CARVER,                )
                               )
       *Plaintiff*      )
                               )
v.                             )    No. 1:13-cv-390-JHR
                               )
CAROLYN W. COLVIN,             )
*Acting Commissioner of Social Security,*  )
                               )
       *Defendant*      )

## *MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge erred in declining to credit his testimony fully and in making a residual functional capacity ("RFC") determination unsupported by substantial evidence. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 22) at 6-9. Finding the administrative law judge's decision supported by substantial evidence, I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 28.

administrative law judge found, in relevant part, that the plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, Finding 1, Record at 23; that he had a severe impairment of hearing loss of unknown etiology, intermittent, Finding 3, *id.*; that he retained the RFC to perform a full range of work at all exertional levels but needed to avoid loud noise without hearing protection, environments where auditory warning signals were necessary, and situations requiring constant fine hearing skills or involving constant high conversational tones, Finding 5, *id.* at 24-25; that, considering his age (58 years old, defined as an individual of advanced age, on his alleged disability onset date, February 9, 2010), education (at least high school), work experience (work skills acquired from past relevant work), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 27-28; and that he, therefore, had not been disabled from February 9, 2010, through the date of the decision, June 6, 2013, Finding 11, *id.* at 29. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work

other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Credibility Determination

The administrative law judge found the plaintiff not entirely credible to the extent that he maintained that his fluctuating bilateral hearing loss, in combination with his other physical impairments, prevented him from performing basic work-related activities on a regular and continuing basis. *See* Record at 25. He explained:

> [A]lthough the [plaintiff] may not be performing work as a trial attorney, the evidence of record reveals that he continues to perform legal work on some level. For example, he testified that he continues to work an average of five hours per month on non-litigation issues, including advising local municipalities, and providing legal advice on issues of real estate and wills and estates. However, he also testified that he refers any related trial work to another attorney. Any other legal work that he performed since his alleged onset date, he testified, was referred through friends and family with the knowledge of his hearing limitation. As discussed in detail below, although he may not be able to perform his past relevant work as a trial attorney, there are other jobs in the national economy that he is capable of performing.

3

*Id.* He discredited the plaintiff's contention that, as a result of his impairments, he would miss at least three or four workdays during a typical month and be limited to working a maximum of four hours before needing to rest for at least an hour and a half during the workday, which he deemed unsupported by the objective medical findings and the plaintiff's level of daily activity. *See id*. at 26-27.

With respect to the objective medical findings, the administrative law judge determined, in relevant part, at Step 2:

> [T]he [plaintiff's] obesity, degenerative joint disease of the neck, asthma and obstructive airway syndrome have no more than a minimal effect on his ability to perform basic work-related activities on a regular and continuing basis, and are therefore "non-severe" medically determinable impairments.
>
> . . . [T]reatment records reveal that the [plaintiff's] asthma and obstructive airway syndrome is generally controlled with medication and results in no functional limitations (Exhibit 8F, pp. 11-12, 19-20, 34-35). Although Andrew C. Dixon, M.D. (Dr. Dixon), the [plaintiff's] treating pulmonologist, noted a probable diagnosis of obstructive sleep apnea, the [plaintiff] has consistently denied further workup (Exhibit 8F, pp. 11, 19, 34-35).
>
> The undersigned further finds that the [plaintiff's] testimony regarding his subjective pain with fatigue is not supported by the objective medical findings, and is therefore not a medically determinable impairment.

*Id*. at 23-24.

The administrative law judge also accorded varying degrees of weight to two medical opinions of record, those of agency nonexamining consultant Benjamin Weinberg, M.D., and treating physician James Delehanty, M.D. *See id*. at 27. Dr. Weinberg authored an October 29, 2011, physical RFC opinion in which he stated that the plaintiff had bilateral fluctuating hearing loss, needed to avoid situations/environments with auditory warning signals and where fine hearing skills were required, and needed to avoid "excessive exposure to high tones for hearing conservation and . . . may progress to intermittent use of hearing aid[s]." *Id*. at 91-92. Dr.

Delehanty indicated, in a private insurer's disability benefits form completed in May 2012, that the plaintiff had one active diagnosis, hearing loss, causing an inability to reliably hear in court, that he maintained a limited office practice, that his limitations were lifelong, and that his problems were progressive. *See id*. at 340-42. He indicated in a similar form, completed in November 2012, that the plaintiff's hearing loss was worsening, with an inability to reliably communicate in court, that his current treatment was hearing amplification, that he was restricted to a limited office practice, and that his situation was progressive and his restrictions permanent. *See id*. at 343-45.

The administrative law judge gave "significant weight" to the Weinberg RFC opinion but "less weight" to Dr. Weinberg's conclusion that the plaintiff had to avoid situations and environments in which fine hearing skills were required and avoid excessive exposure to high tones for hearing conservation. *See id*. at 27, 91-92. He explained, "Although the [plaintiff] reported some level of improvement when using hearing aids, he does not use these devices all of the time[,]" and "[t]his limitation is also inconsistent with . . . his ability to continue to provid[e] legal services as an attorney." *Id*. at 27 (citations omitted).

He gave "some weight" to the Delehanty statements, to the extent that they were consistent with his RFC determination and finding that the plaintiff was unable to perform his past relevant work as a trial attorney. *See id*. He noted that Dr. Delehanty had "based his opinions on his treating relationship with the [plaintiff] and offered his statements in connection with the [plaintiff's] long-term disability claim" but did "not offer an assessment with respect to the [plaintiff's] residual functional capacity to perform other work." *Id*. He concluded, "In this respect, his assessments are of little probative value." *Id.*

The plaintiff first complains that the administrative law judge's credibility finding is flawed in that he specifically discussed only the plaintiff's testimony that he continued to work an average

5

of five hours per month on non-litigation issues and did not indicate any way in which that testimony was inconsistent with his testimony regarding his impairments and limitations. *See* Statement of Errors at 6. Yet, as noted above, the administrative law judge deemed the plaintiff's claimed restrictions unsupported not only by his level of daily activities but also by objective medical evidence. As discussed below, this included a lack of evidence that the plaintiff's claimed sleep apnea was a medically determinable impairment.

With respect to the plaintiff's activity level, as the commissioner observes, part-time work may be suggestive of greater functional ability than a claimant has alleged. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 26) at 15-16; 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Bowie v. Colvin*, No. 2:12-cv-205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 7, 2013) (administrative law judge permissibly considered whether the physical and emotional demands of claimant's activities, including her part-time work as a bartender for significant periods of time after her alleged onset date of disability, were inconsistent with the degree of impairment that she alleged).

At oral argument, the plaintiff's counsel distinguished *Bowie* on the basis that it involved more substantial ongoing part-time work as a bartender. However, as the commissioner observes, *see* Opposition at 16, the plaintiff's part-time work suggested his ability to use fine hearing skills at least occasionally, given his testimony that he continued to hold phone consultations with clients, *see* Record at 43. Even if, as the plaintiff contends, his part-time work alone did not call into question the credibility of any statement that he had made, *see* Statement of Errors at 6, it

called into question Dr. Weinberg's finding that he needed to avoid situations or environments in which fine hearing skills were required.

The plaintiff next takes issue with the administrative law judge's credibility determination on the ground that he pointed to no instance in which any of the plaintiff's physicians ever discredited his complaints of intermittent hearing loss or sleep apnea. *See id*. He cites *Johnson v. Astrue*, 597 F.3d 409, 414 (1st Cir. 2009), for the proposition that an administrative law judge's decision to discredit a claimant was not supported by substantial evidence when the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and the claimant's physicians never discredited such symptoms. *See id*. Nonetheless, as the commissioner asserts, *see* Opposition at 16-17, *Johnson* is distinguishable because it concerns fibromyalgia, a disease with respect to which a claimant's pain allegations are particularly significant because the condition does not manifest itself in any laboratory abnormalities, *see Johnson,* 597 F.3d at 410.

The plaintiff finally argues that, as a direct result of the administrative law judge's flawed credibility determination, he erroneously failed to find a severe impairment of sleep apnea, as a result of which he omitted claimed limitations that would have made a difference at Steps 4 and 5. *See* Statement of Errors at 6-7. The commissioner rejoins that the administrative law judge never reached the issue of the severity of the plaintiff's claimed sleep apnea, having determined, as a threshold matter, that it was not a medically determinable impairment. *See* Opposition at 8-9; *see also, e.g.*, Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2014) ("SSR 96–7p"), at 133 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating

the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."); *see also* 20 C.F.R. § 404.1508. For this proposition, her counsel pointed at oral argument to the administrative law judge's statement that, although Dr. Dixon "noted a probable diagnosis of obstructive sleep apnea, the [plaintiff] has consistently denied further workup." Record at 24 (citations omitted).

In support of his client's position, the plaintiff's counsel relied at oral argument on the administrative law judge's statement that the plaintiff's "asthma and obstructive airway syndrome is generally controlled with medication and results in no functional limitations." *Id*. (citations omitted). He contended that the phrase "obstructive airway syndrome" is synonymous with sleep apnea; counsel for the commissioner, by contrast, argued that it referred to the plaintiff's asthma.

Counsel for the commissioner has the better argument. As the plaintiff's counsel acknowledged at oral argument, the only evidence before the administrative law judge that the plaintiff had been definitively diagnosed with sleep apnea was his hearing testimony that he had sleep apnea and was using a CPAP machine. Record at 59-60. There was no medical evidence documenting signs or laboratory findings consistent with a sleep apnea impairment. What is more, a review of the portions of the record cited by the administrative law judge in discussing both "asthma and obstructive airway syndrome" and "obstructive sleep apnea" reveals that the sole condition treated with medication was the plaintiff's asthma, bolstering support for the interpretation that "obstructive airway syndrome" was used interchangeably with "asthma." *See* Record at 310-11, 318-19, 333-34.

Because the administrative law judge supportably found sleep apnea not to be a medically determinable impairment, none of the plaintiff's statements regarding restrictions flowing from

8

that condition could be credited as a matter of law. The credibility determination did not come into play.

For these reasons, the plaintiff falls short of providing a basis on which to disturb the administrative law judge's credibility determination. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

## B. RFC Determination

The plaintiff next argues that the administrative law judge reached an RFC determination unsupported by substantial evidence because:

1. He largely adopted the opinion of agency nonexamining consultant Dr. Weinberg, which "consist[ed] of a series of short notes setting forth the development of [the plaintiff's] disability claim and the medical evidence of record at that time." Statement of Errors at 8 (citation omitted) (quoting *Berrios Lopez v. Secretary of Health & Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991), for the proposition that reports from nonexamining sources that "contain little more than brief conclusory statements . . . are entitled to relatively little weight").

2. The reasons he gave for discounting the portion of the Weinberg opinion regarding fine hearing do not withstand scrutiny. *See id*.

3. The only reason given for failing to adopt the opinions of treating physician Dr. Delehanty, that he had not completed a full RFC assessment, does not constitute the requisite good reason for doing so. *See id*. at 8-9.

There was no error in the choice to accord more weight to the opinion of Dr. Weinberg than that of Dr. Delehanty. Dr. Weinberg summarized the plaintiff's alleged impairments and the

9

medical evidence of record and explained the basis for the communicative and environmental limitations he assessed. *See* Record at 86-92. His opinion was sufficiently detailed to constitute substantial evidence upon which the administrative law judge could rely. *See Berrios Lopez*, 951 F.2d at 431 (nonexamining consultant's report constituted substantial evidence in support of the administrative law judge's RFC finding when consultant "at least briefly mention[ed] all of claimant's alleged impairments and state[d] medical conclusions as to each[,]" suggesting that he "did review the medical file with some care[,]" had most, if not all, of the medical evidence available for review, and rendered an opinion consistent with that of second nonexamining consultant, reinforcing his conclusions). Dr. Delehanty did not provide an RFC assessment. *See* Record at 340-45. That was a perfectly adequate reason to find his statements not particularly probative on the subject of RFC, satisfying the administrative law judge's obligation to "give good reasons in his notice of determination or decision for the weight he give[s] [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

As the commissioner contends, *see* Opposition at 13, even if the administrative law judge erred in not adopting Dr. Weinberg's greater restrictions on fine hearing, any error was harmless. Based on the testimony of a vocational expert present at hearing, the administrative law judge found the plaintiff capable of performing the jobs of Cleaner II, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 919.687-014, Laundry Worker II, DOT § 361.685-018, and Lumber Handler, DOT § 922.687-070. *See* Record at 28. As the commissioner points out, *see* Opposition at 13, the DOT indicates that the jobs of Cleaner II and Laundry Worker II do not require any ability to hear, *see* DOT §§ 919.687-014, 361.685-018. At oral argument, the plaintiff's counsel contested the suggestion that the alleged error was harmless, asserting that those two jobs, as actually performed, require hearing consistently for safety reasons,

and noting that the vocational expert testified that a person who needed to miss three or four unscheduled days of work per month and could only sustain work for a maximum of four hours a day before needing to rest for an hour and a half could not perform any of jobs at issue.  *See* Record at 73-74.  However, plaintiff's counsel identified no record support for the first proposition and acknowledged that the vocational expert's testimony was predicated on a hypothetical question that concerned the effects of sleep apnea as well as of hearing loss.  He argued that a need to miss three to four unscheduled days of work per month, standing alone, would rule out the jobs, but conceded that he had no authority for that proposition.  In any event, as discussed above, the administrative law judge declined to credit that allegation, and his credibility determination is supported by substantial evidence.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 28th day of December, 2014.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge